UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
Austin Division

| | |
|---|---|
| STACEY CLEVELAND, | ) |
| Plaintiff, | ) Case No. 1:23-CV-762 |
| v. | ) |
| SALESFORCE, INC., | ) |
| Defendant. | ) |

## PLAINTIFF'S ORIGINAL COMPLAINT

### Brief Summary of this Pleading

This lawsuit is brought to remedy race discrimination committed by and within the Office of Equality at Salesforce. The very business unit that should champion equality instead makes a mockery of it and gives lie to Salesforce's claim to value it.

Stacey Cleveland, who is Black, was recruited to Salesforce in 2021 by the then President of North America Sales, Andy Kofoid. Kofoid sincerely valued Cleveland's expertise and 18-years of experience working in various aspects of diversity, equity and inclusion. Cleveland accepted the job in large part because she believed in Salesforce's self-avowed commitment to improving its history of discrimination against African-American women which the company admits to and is now referenced inside Salesforce as "The Black Woman Experience."

But as Cleveland and many other Black women have come to learn, Salesforce makes a mockery of its claim to value the Black Woman Experience. Stacey Cleveland's Black woman experience at Salesforce was that she brought her extensive DEI expertise to the company, leveraged her abilities and her own initiative and sweat to gain business-unit buy-in and funding for the cause of equality, assembled a team under her leadership to carry out her vision, took over responsibility for another team that had been led by an Anglo woman who was out on leave for many months and achieved great success, only to be transferred into the Office of Equality and see Salesforce's non-Black Chief Equality Officer, Lori Castillo Martinez, take credit for Cleveland's success, snatch Cleveland's team away from her, place the team Cleveland built under the supervision of a white colleague, demote Stacey Cleveland to be the peer of those on the team she built, and then tell Cleveland that her new job was to make her white colleague – now her boss – successful.

1

Salesforce's action, all taken by the ostensible leader of its Office of Equality, is shocking. Yet sadly Stacey Cleveland's Black woman experience is anything but unusual at Salesforce. Cleveland joins the many other Black women who are demanding that Salesforce honor its legal obligation to treat Black women equally.

Plaintiff Stacey Cleveland ("Cleveland") files this Complaint against her current employer, Defendant Salesforce, Inc. ("Salesforce") and respectfully requests that the Court enter judgment in her favor and award her all damages, fees, interest, and costs recognized at law or in equity.

## I. Parties

1. Plaintiff Stacey Cleveland is an individual residing in Austin, Williamson County, Texas.

2. Defendant Salesforce, Inc. ("Salesforce") is a foreign corporation with its principal place of business in San Francisco, California and with offices in Austin, Travis County, Texas. Salesforce can be served by serving its registered agent for service of process, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

## II. Jurisdiction & Venue

3. **Federal Question Jurisdiction --** This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Cleveland asserts a cause of action for discrimination under federal law – 42 U.S.C. § 1981.

4. **Personal Jurisdiction --** The Court has personal jurisdiction over Salesforce because it has maintained minimum contacts with the State of Texas sufficient to subject it to personal jurisdiction consistent with due process under the Fourteenth Amendment to the United States Constitution. Salesforce maintains offices in Texas, employs employees, and conducts extensive business activity in Texas. Salesforce employed Cleveland in Texas, and the facts of this case arise out of Cleveland's employment by Salesforce in Texas. Salesforce has thereby purposefully availed itself of the benefits and protections of Texas by establishing minimum contacts with Texas, and

the Court's exercise of jurisdiction over Salesforce does not offend traditional notions of fair play and substantial justice.

5. **Venue.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this case occurred in this district. Cleveland was employed by Salesforce in Austin. Acts of discrimination occurred in and affected Cleveland in Texas.

### III. Facts

6. With almost eighteen years of experience working in various aspects of diversity, equity and inclusion, Stacey Cleveland was recruited to Salesforce in late 2020 and early 2021 by the then President of North America Sales, Andy Kofoid.

7. Cleveland was most excited about joining Salesforce because she felt that the company had a history of taking risks when others would not. Cleveland believed it had the potential to be a force in the diversity space across the tech industry, armed and ready for innovative and transformational change. Cleveland believed in Salesforce's self-avowed commitment to change the what it called "The Black Woman Experience" from the history of discrimination within the company to one of equality and opportunity.

8. As Cleveland and many other black women have come to learn, Salesforce makes a mockery of its supposed efforts to change The Black Woman Experience within the company.

9. Cleveland began working for Salesforce on February 1, 2021, as the first Director, Equality Partner charged with creating the vision for Equality, Equity, and Inclusion ("DEI") in the North America Sales organization. At that time, she had a dual reporting structure to Andy Kofoid, and Stephanie Orth. When Cleveland asked Andy Kofoid what his expectations were for the work in this new role, he said, "Quick wins, action and Impact."

10. Cleveland demonstrated her impact immediately. After only nine days in the new role, Cleveland spoke at the North America Sales company kickoff to give a high-level overview of what the sales organization could expect from her in the new role. In the first two quarters of FY22 (2/1/21-7/21/21), Cleveland delivered the following successes:

- Created strategy and developed a resource model to support the Equality V2MoM in Sales;

- Created the Equality, Equity and Inclusion Taskforce sponsored by the Sales Executive Leadership Team and executed by SVP sales leaders resulting in 200+ taskforce applicants and five work streams;

- Launched the first Talent Equity Audit to address the overrepresentation of underrepresented employees in the lowest talent development tracks. The audit resulted in updated almost 30%+ talent review decisions to reflect a more appropriate and data driven decision;

- Conducted monthly equality coaching and advisory sessions with executive sales leaders;

- Created a resource to address bias during talent review and promotion calibration meetings with senior leaders;

- Redesigned the equality board meeting to be more strategically aligned with the business needs and the people lifecycle (Equality Business Review); and

- Acted as equality advisor and thought partner to COE partners aligned to the sales organization. Coached them to embed equality into their daily operations versus operating in silos with equality as an afterthought.

11. Cleveland's success in North America Sales was so well known across Salesforce that other organizational units began to ask, "How do I get a Stacey?" In fact, Lori Castillo Martinez told Cleveland that she kept being asked by business unit leaders throughout Salesforce that they wanted to know, "How do I get a Stacey?"

12. At that time, Lori Castillo Martinez, was Interim Chief Equality Officer for the Office Equality ("OOE"). In July of 2021, Susi Collins, a new employee to the OOE was hired with the title, Senior Director, Equality Partner, using the same job description as Cleveland, however the scope and responsibilities were less than Cleveland's scope and responsibilities, also called her

4

"remit." Cleveland expressed concern that her current level (Director – level 9) was not aligned with the scope and responsibilities of the role and asked for a level review to be considered for a Senior Director level correction. Cleveland was told by Employee Success (Salesforce's name for its human resources department) that there was not a process for a level review, in other words Salesforce had no process to achieve fairness by ensuring that employees with similar qualifications and responsibilities receive similar compensation and are at similar levels within the hierarchy. Cleveland escalated the situation to her then-current leader Stephanie Orth and the interim head of the OOE, Castillo Martinez. They requested to review Cleveland's resume and it was confirmed that her level should be at the level 10 – Senior Director.

13. According to Salesforce's Employee Success office, there was no protocol to change a level outside of a promotion cycle, so Cleveland's re-leveling was resolved during the November 2021 promotions cycle. Although this may be considered within Salesforce to be a "promotion," this personnel action was taken only because Cleveland brought to Salesforce's attention the unequal treatment of her then-current level and the need to correct it.

14. In connection with this leveling action, Cleveland was required to agree to transfer out of the North America Sales business unit she was successfully supporting and into the Office of Equality and reporting to Lori Castillo Martinez. Initially Cleveland, bought into the hype surrounding Castillo Martinez, was invested in Castillo Martinez and excited about the opportunity to report to a woman of color leader who she believed was motivated to make systematic shifts, instead of performative programmatic fixes.

15. Initially, Cleveland trusted Castillo Martinez and believed what she said to be true. Castillo Martinez praised Cleveland's ability to innovate and be flexible as what she called a "utility player." Castillo Martinez tasked Cleveland with gaining buy-in from EVP leaders to fund

Director level headcount to fund Equality Partner roles for each of their specific organizational units. The directors would report directly to Cleveland as a part of the new DEI team in the OOE, however, each business unit would need to fund each of these positions. Cleveland was successful in her efforts, gaining headcount funding from the Executive Vice Presidents of Sales, Technology, Products and the Client Success Group. Castillo Martinez publicly commended Cleveland on her executive presence and leadership style. According to Castillo Martinez, Cleveland's development track was "plan for the long term," and she stated that Cleveland was a "future leader" on her team.

16. Cleveland officially transitioned into the Office of Equality on November 1, 2021, as the Senior Director, Equality Business Partner. Cleveland's additional remit (scope and responsibilities) included:

- Sourced, hired, onboarded Director, Equality Business Partners;

- Built the framework, action plan, resource model and strategy for the Equality Business Partner team from a team of one (Cleveland), to a team of six (four Directors, one Senior Manager, one Senior Specialist);

- Increased accountability by providing dedicated equality support to four complex and highly critical business functions [Sales, CSG, Tech, Products comprise 70+% of the company's FTEs];

- Built the Equality Business Review quarterly process to provide in-depth diversity data and real-time solutions to executive level leaders across all four business areas;

- Expanded consultative support strategy across M&A business functions including Slack, Tableau and Mulesoft, as well as, non-supported business units (G&A, Legal, Rews);

- Transition from AMER focus to global scope [Canada, EMEA, India, LatAm]; and

- New hire VP+ Onboarding training sessions in partnership with the Executive onboarding team.

17. Stacey Clark O'Hara ("O'Hara") was an employee of Salesforce who essentially inherited her VP title by virtue of having been a Vice President of a much smaller company, Tableau, that was acquired by Salesforce in late 2019. In January 2022, O'Hara, (VP, Inclusion)

was transitioning to the Office of Equality from the Tableau Inclusion team. Cleveland, Castillo Martinez and O'Hara met at the Salesforce Tower in San Francisco to discuss how they would expand the equality partner work to the General Administration function, and the Merger & Acquisition companies. At the time, the OOE organization chart reflected that Cleveland would be responsible for Technology, Products, Sales and the Client Success Group, and O'Hara would be responsible for General Administration and M&A functions. Although O'Hara had VP in her title, O'Hara and Cleveland were peers in the organization, both were treated as members of Castillo Martinez's leadership team and Cleveland was vastly more qualified and experienced in DEI.

18. In February 2022, O'Hara took a leave of absence. Cleveland was tasked with taking over O'Hara's remit, assuming responsibility for providing DEI services to the General Administration and Merger and Acquisition ("M&A") functions, in addition to the four functions already covered by Cleveland's team. This meant that Castillo Martinez tasked Cleveland with responsibility for running two remits/teams. At the same time, Cleveland was working closely with Castillo Martinez to move Salesforce toward the representation and Environmental Social, and Governance goals set during the 2022 Company Kickoff where Cleveland presented to the entire company on behalf of the OOE.

19. Throughout Cleveland's time reporting to Castillo Martinez, Cleveland received only positive feedback from her supervisor, Salesforce's Chief Equality Officer and other executive leaders she supported. Based in large part on the positive feedback received from Castillo Martinez, other senior leaders, and in accordance with Salesforce's established protocol for promotion to Vice President (the level at which she was already acting), in the Summer of 2022, Cleveland began to prepare to be considered for a promotion nomination. Cleveland believed that

her performance, scope, and responsibilities were comparable to the majority of her peers who were Vice President ("VP") leaders in their respective Center of Excellence (COE). Examples include, Kirsten Jamison, VP, ESBP Jessica Giovannetti, VP ESBP, Mariel Danzinger, VP, ESBP, Jill Fairchild, VP, ESBP Melissa Hundley, VP Talent Management, to name a few. In preparation for the promotion nomination process, Cleveland followed the recommended promotions protocol. She drafted a promotions rationale to include how her skills and accomplishments have aligned to the company's Great Leader Characteristics. She sought feedback from her sponsors, mentors, team and peers. Cleveland had support for her promotion from VPs throughout Salesforce with whom she had worked. She discussed the promotions nomination packet with her direct leader, Castillo Martinez, for consideration.

20. During a quarterly check-in with Castillo Martinez to discuss Cleveland's individualized development plan (IDP), Castillo Martinez stated that Cleveland's current scope was "too small to support a VP level role." Castillo Martinez continued to state that she believed Cleveland was "operating at a VP level." Castillo Martinez even recommended Cleveland consider applying for two open VP roles that were internally posted (VP, Careerforce & VP, ESBP for the Products team), but insisted that she could not be considered for a VP position in the OOE because, despite being the leader of two separate teams that were serving all of Salesforce, her "remit was too small."

21. Cleveland, who has spent her entire professional career working in the field of Diversity, Equity and Inclusion, did not now want to change careers. Given Cleveland's desire to remain in the OOE and lead the work that she built, Castillo Martinez and Cleveland discussed how Cleveland's remit scope could increase within the OOE. Castillo Martinez stated that VPs on her leadership team would need to have a "global remit" that included "managing three

workstreams." Castillo Martinez cited Cleveland's colleague, Jacalyn Chapman, as an example based on Chapman's revised remit and recent promotion from Senior Director to VP. Castillo Martinez recommended Cleveland add these workstreams to increase the scope of her remit for VP consideration:  1) maintain current Equality Business Partner team remit, 2) inherit the Enablement team from Stephanie Shipp, and 3) build the equality strategy for Latin America (a global remit).

22. Importantly, Castillo Martinez was clearly holding Cleveland to a standard that was not applied to other VPs. For example, O'Hara, who is white, was a VP with a smaller remit than Cleveland. Still, Cleveland agreed to try and meet the higher standard that Castillo Martinez had created for Cleveland. But then Castillo Martinez told Cleveland that the current budget would not support additional promotions in that cycle. Apparently concerned that Castillo Martinez statement about problems with the OOE budget might be found to be a lie, Salesforce would manufacture another reason, namely, that Cleveland could not be promoted to VP so soon after the level-setting that occurred earlier. This second excuse for not promoting Cleveland was also false as shown by Castillo Martinez recommending Cleveland for VP positions in other departments.

23. Ultimately Cleveland was not nominated to be considered for a VP promotion although she had support from VP+ leaders, including, Kirsten Jamison, VP, ESBP, Warren Wick, President North America Sales, Patrick Felder, SVP, ESBP, and Stephanie Orth, EVP, ESBP and was more qualified than and had greater responsibility than white VPs.

24. In September 2022, Castillo Martinez informed her leadership team that O'Hara would be returning from leave in October 2022. Cleveland directly asked Castillo Martinez what remit O'Hara would have when she returned. Initially, Castillo Martinez told Cleveland she was not sure

what remit O'Hara would have upon return. Later, Castillo Martinez contacted Cleveland on her personal phone during paid time off on October 15, 2022 and asked if Cleveland could join a call.

25. On that October 15, 2022 call, Castillo Martinez informed Cleveland that (a) Cleveland was being demoted such that Cleveland would now report to O'Hara, and (b) that the Equality Partner team built and managed by Cleveland -- and the work they performed -- would now be managed by O'Hara effective November 1, 2022.

26. The team Cleveland built with vision, strategy, and hard work; the team whose funding Cleveland solicited by skillfully obtaining buy-in from business unit leaders; the work that was "too small" to support a VP nomination for Cleveland – would now report to O'Hara a white woman with an inherited VP title and less experience. Instead of being her team's supervisor and leader, Cleveland was now their peer reporting to O'Hara.

27. Cleveland was humiliated and disheartened. She expressed these feelings during an in-person meeting with Castillo Martinez in San Francisco on October 18, 2022. Cleveland stated that this was a demotion that would impair Cleveland's reputation in the eyes of leaders in the organization, and she expressed concern about what it meant for the OOE and Salesforce to have a white woman taking over the team and the strategy that a Black woman developed. When Cleveland asked Castillo Martinez why she made this change, Castillo Martinez responded with, "I had to give her (O'Hara) something to do."

28. When Cleveland asked Castillo Martinez what would be her measures of success in the new role, Castillo Martinez told Cleveland to "be Stacey [Clark O'Hara's] lieutenant." "Demonstrate your (Cleveland's) confidence in SCO because the team trusts you." In other words, it was Cleveland's responsibility to convince the team she had built that O'Hara was competent to take over Cleveland's former position.

29. The pretext for this demotion was that Salesforce's Employee Success department was focusing on "spans and layers." Cleveland was told by Castillo Martinez that, unless O'Hara had three or more direct reports (Cleveland's team size was six) O'Hara's status as a Vice President might be in jeopardy due to pending layoffs.

30. Cleveland asked for a job description given that Castillo Martinez was defining the new remit of work as "critical to driving our future of scale." Cleveland was given an existing body of work, the equality Enablement team and was asked by Castillo Martinez to "reimagine enablement." Additionally, Cleveland was asked to create a new body of work that would serve as the equality governance model for the company. Castillo Martinez assured Cleveland that her new remit was "critical to the long range planning and operationalization of Equality for the future."

31. Castillo Martinez also assured Cleveland that she would continue to serve on OOE's leadership team so that Cleveland would have close proximity to executive leadership in her new capacity as team leader for enablement and the new body of work that Cleveland ultimately called The Equality Collective. However, in January 2023, Castillo Martinez removed Cleveland from her leadership team. Cleveland was told that any important leadership updates would now be passed down to Cleveland from O'Hara. Although Castillo Martinez stated that Cleveland's work was "important" and "critical" to the company, Cleveland received zero dollars in the FY24 budget to operationalize and reimagine her new remit.

32. Cleveland was further demoted in that she lost two full-time headcount due to layoffs and unexpected role change, decreasing her team size from five to three. Cleveland's direct report, Mike Kelly, Director, Enablement (Black male) was laid off in January 2023.

33. Initially, Castillo Martinez wanted to offer Mike Kelly "a package" to exit the company due to lack of cultural fit. However, unknown circumstances prevented him from being terminated.

As a part of Project Caterpillar, Cleveland was informed by Castillo Martinez that Kelly would be on the list for upcoming layoffs instead. Given the organizational change, Castillo Martinez made Kelly a direct report to Cleveland on November 1, 2022. In December 2022, Cleveland presented Castillo Martinez with the updated organizational chart for her new team which still included Mike Kelly. Castillo Martinez asked Cleveland had she "changed her mind about laying off Mike," insinuating falsely that *Cleveland* had expressed a desire to terminate Kelly's employment. In fact, it was Castillo Martinez who wanted Kelly to be terminated. Castillo Martinez was trying to launder her own decision to terminate a Black male employee by trying to get Cleveland to take responsibility for the termination.

34. Cleveland explained that she could not make the decision to terminate Kelly because she had not had sufficient time as his manager to evaluate his performance and thereby have a basis to justify his termination. Castillo Martinez then told Cleveland that this – meaning Kelly's termination – would be taken care of in upcoming layoffs. On the other hand, Cleveland's direct report, Brigid Warmerdam, Senior Manager, Programs (white woman) was given the opportunity to take a role on another team in the OOE that was not posted for others to consider. Cleveland was told by O'Hara that Salesforce would lose Brigid if she was not allowed to go to another team. Cleveland expressed her concern about relinquishing headcount from her team given that she'd already lost Mike Kelly due to the company wide layoff. O'Hara told Cleveland that she "needed to consider Brigid's employee experience." When Cleveland asked O'Hara about her own (Cleveland's) employee experience, O'Hara did not have a response.

35. Cleveland was also advised to relinquish the full-time equivalent (FTE) headcount to Ruth Hickin for an unknown/unposted role on her team.

## IV. Cause of Action

**Count 1:  Race Discrimination in Violation of 42 U.S.C. § 1981**

36.     Cleveland incorporates by reference the allegations set forth in paragraphs 1-35 above.

37. 42 U.S.C. §1981 prohibits race discrimination and retaliation in the making and enforcing of  contracts, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges and conditions of the contractual relationship. Specifically, Section 1981 affords a federal remedy against discrimination in private employment on the basis of race.

38. Cleveland, who is Black, is a member of a protected class.

39. As more fully described above and below, Salesforce intentionally discriminated against Cleveland because of her race in violation of 42 U.S.C. §1981.  By way of example, the artificially high bar Salesforce imposed on Cleveland to be considered for promotion to Vice President was a transparent act of race discrimination towards Cleveland.  O'Hara, a white female, inherited a Vice President role at Tableau, a much smaller company that was acquired by Saleforce. O'Hara had less diversity and human resources experience than Cleveland, yet she had the same remit, if not smaller, than the one proposed by Castillo Martinez as a prerequisite for consideration as a Vice President for Cleveland.

40. Furthermore, when Cleveland sought to take on a "global remit" by adding responsibility in Latin America, Castillo Martinez would not move forward with the proposed plan. Also, O'Hara did not have any global remit and was a Vice President, giving lie to Castillo Martinez's claim that a global remit was a requirement preventing Cleveland from having the VP title she deserved.

13

41. Castillo Martinez ultimately admitted that her refusal to support Cleveland for VP was unjustified because she tried to convince Cleveland to apply for other Vice President roles outside of Castillo Martinez's organization and outside of DEI where Cleveland's experience, commitment and passion were most valuable. If under Salesforce's established standards, Cleveland's remit had been too small to make VP in the Office of Equality, she should not have qualified for VP roles in other departments.

42. Salesforce would later claim that Cleveland could not be considered for VP so soon after her "leveling up." There was no such policy. If such a policy existed, Castillo Martinez would not have suggested that Cleveland apply for VP positions in departments other than her own.

43. Castillo Martinez's actions have every hallmark of raising the bar ever higher for a Black woman in comparison to non-Black employees.

44. Salesforce also discriminated against Cleveland by demoting her. Castillo Martinez made Cleveland the peer of the members of the team she built and turned them over to be supervised by O'Hara, whom they did not know, and removed Cleveland from the OOE Leadership Team. Castillo Martinez then told Cleveland her number one priority should be to help O'Hara, now her supervisor, "get up to speed," and "be successful." Among the clearest evidence of the discriminatory nature of the demotion was Castillo Martinez telling Cleveland to "be [O'Hara's] her Lieutenant."

45. As Cleveland has unfortunately learned over the past 13 months working in the department that is touting Salesforce's new "Black Woman Experience," the actual experience of Black women has not changed; Black women continue to be confronted with double standards, microaggressions, discrimination, gaslighting and retaliation on a daily basis. The OOE leadership

should be the model of equality, equity and inclusion, instead they perpetuate the same biased, discriminatory, anti-Black behavior that Cleveland worked tirelessly to mitigate.

## V. Damages

46. As a result of Salesforce's unlawful conduct, Cleveland has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

47. Cleveland has also incurred other actual damages as a result of Salesforce's unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## VI. Punitive Damages

48. The conduct committed by Salesforce against Cleveland is the type of conduct demonstrating malice or reckless indifference to Cleveland's rights. Therefore, Cleveland additionally brings suit for punitive damages.

## VII.   Attorneys' Fees and Expert Fees

49. A prevailing party may recover reasonable attorneys' and experts' fees under Section 1981.  Cleveland seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Cleveland additionally brings suit for expert fees.

## VIII.   Jury Demand

50. Having paid the fee upon filing this Complaint, Plaintiff hereby demands a jury pursuant to Fed. R. Civ. P. 38.

### Conclusion and Prayer

Cleveland respectfully requests that it have judgment against Salesforce for:

a.  Economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future;

b.  Past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses and lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses;

c.  Punitive damages;

d.  All costs of expert witnesses and the costs of litigation;

e.  Attorneys' fees for prosecution of this case at trial and on appeal;

f.  Pre-judgment interests as required by Chapter 304, Texas Finance Code or other applicable laws;

g.  Post-judgment interest, at the maximum legal rate;

h.  Equitable and injunctive relief, including back pay, front pay, and reinstatement; and

i.  All other relief to which Cleveland may be entitled at law, or in equity.

Dated: July 6, 2023  Respectfully submitted,

**McGinnis Lochridge LLP**
1111 West Sixth Street, Building B, Suite 400
Austin, Texas 78703
512.495.6000 (telephone)
512.495.6093 (telecopier)
mshaunessy@mcginnislaw.com

By: */s/ Michael Shaunessy*
Michael Shaunessy
State Bar No. 18134550


/s/ Thomas A. Nesbitt
Thomas A. Nesbitt
 State Bar No. 24007738
tnesbitt@dnaustin.com
DeShazo & Nesbitt L.L.P.
809 West Avenue
Austin, Texas 78701
512/617-5560
512/617-5563 (Fax)

**ATTORUNEYS FOR PLAINTIFF
STACEY CLEVELAND**